This case presents the question whether an unoccupied house may be deemed "abandoned" under Iowa Code section 657A.10A (2007) where it was rendered uninhabitable by fire three and a half years ago, has been boarded up since then, has been broken into repeatedly, and is the subject of complaints from neighbors. The owner of the house objected to abandonment, claiming she has been paying the property taxes and mortgage and that her failure to correct the situation was due to an ongoing dispute with her insurance company. Because we agree with the district court's determination that Anita Harder has abandoned her property within the meaning of section 657A.10A, we affirm the judgment below in favor of the City of Council Bluffs.
I. Background Facts and Proceedings
Harder owned a 1036-square-foot house in the City of Council Bluffs (City). In September 2004, the house sustained fire damage and has not been inhabited since. Harder moved out and her insurer initially paid some living expenses, but has not paid anything else.
Meanwhile, Harder continued to make her mortgage payment of $610 per month, which included property taxes and insurance. As time passed, neighbors complained to the City about deteriorating conditions. The City determined the home was uninhabitable, and the fire department shut off the utilities.
Approximately two years after the fire, in October 2006, the City filed a petition requesting a transfer of title to the property to the City, alleging the property had been abandoned and was a public nuisance. See Iowa Code 657A.10A. Trial was repeatedly postponed at Harder's request on the ground that she was continuing to negotiate with the insurance company for payment. The case was eventually tried in April 2008. Following trial, the district court found the house was an abandoned property within the meaning of section 657A.10A. Accordingly, the district court awarded title to the City. However, it ordered that if any excess remained after the property was "resurrected and sold," that should go to Harder. Harder moved for a new trial. The district court summarily overruled the motion, and this appeal followed.
II. Analysis
Harder preliminarily argues that the district court's application of Iowa Code section 657A.10A deprived her of property without just compensation, in violation of the Takings Clause of the Fifth Amendment to the United States Constitution. Harder did not raise this issue until closing arguments and then only made passing reference to it, stating:
 I think that statute has been criticized in other settings in this court as perhaps this whole process is an unlawful and unconstitutional taking of property without just compensation, and I think that's an issue that would be addressed on an appeal and so forth. I think this proceeding could amount to that.
The district court did not address this constitutional issue in its initial or post-trial ruling. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." Meier v. Senecaut, 641 N.W.2d 532, 537 (Iowa 2002). Constitutional issues are no exception. State v.McCright, 569 N.W.2d 605, 607 (Iowa 1997) ("Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal."). Accordingly, we decline to address this argument.
Harder next argues that the district court did not properly apply section 657A.10A to this case. As the case was tried in equity, our review of this issue is de novo. Iowa Code § 657A.10A(1); Iowa R. App. P. 6.4.
"Abandoned" means that
 a building has remained vacant and has been in violation of the housing code of the city in which the property is located or the housing code applicable in the county in which the property is located if outside the limits of a city for a period of six consecutive months.
Iowa Code § 657A.1(1). The legislature has enumerated certain factors the court "shall consider" in determining whether a property has been abandoned. Those factors are:
 a. Whether any property taxes or special assessments on the property were delinquent at the time the petition was filed.
 b. Whether any utilities are currently being provided to the property.
 c. Whether the building is unoccupied by the owner or lessees or licensees of the owner.
 d. Whether the building meets the city's housing code for being fit for human habitation, occupancy, or use.
 e. Whether the building is exposed to the elements such that deterioration of the building is occurring.
 f. Whether the building is boarded up.
 g. Past efforts to rehabilitate the building and grounds.
 h. The presence of vermin, accumulation of debris, and uncut vegetation.
 i. The effort expended by the petitioning city to maintain the building and grounds.
 j. Past and current compliance with orders of the local housing official.
 k. Any other evidence the court deems relevant.
Id. § 657A.10A(3).
Harder concedes that the property was unoccupied for more than six months and, after the fire, the property did not meet housing code requirements for human habitation. See id.
§ 657A.1(1); see also id. § 657A.10A(3)(c), (d).
Additionally, there is no dispute that the utilities were shut off shortly after the fire. Id. § 657A.10A(3)(b). Turning to the other applicable factors, it is apparent from the record that the condition of the house deteriorated over the more than three years the house remained unoccupied.Id. § 657A.10A(3)(e). The house is boarded up.Id. § 657A.10A(3)(f). No efforts have been made to rehabilitate it. Id. § 657A.10(3)(g). Notably, the house sustained several break-ins, indicating that it posed a safety hazard to the neighborhood. Id.
§ 657A.10A(3)(k).
Neighbors have been complaining for several years.
As one might expect, the color photographs of the house that were introduced into evidence show an unsightly structure with temporary coverings on the roof, windows boarded up through the use of large weather-beaten wood panels, panels of the garage exterior missing (so that the garage interior is exposed to the elements), and copious amounts of paint peeling away from the house and the garage.
Harder argues that she has been paying her nephew $100 per month to perform basic upkeep on the property and that she has been paying her property taxes of approximately $1150.68 per year. We agree that these factors might weigh against abandonment in the section 657A.10A analysis. See id.
§ 657A.10A(3)(a), (h). However, they are not sufficient to overcome the other, undisputed facts that support a finding of abandonment here. We believe the legislature enacted section 657A.10A to address this specific type of situation, where a neighborhood house has been vacant, uninhabitable, unrepaired, and deteriorating for three and a half years, with no end in sight. Given the unquestioned statutory factors that support a finding of abandonment, we hold the district court did not err in its ruling.
Harder also argues that she has been paying her mortgage and that she remains at odds with her insurance company, three and a half years after the fire. Lacking funds from her insurer, Harder maintains that she has been unable to renovate and restore the house. While we are sympathetic to these concerns, they are not mentioned in section 657A.10A, and we do not believe they should be controlling here. Section 657A.10A was enacted to address what economists call an "externality," that is, the serious adverse effects of unsafe, abandoned homes on neighborhoods and communities. The legislature recognized that in the existing marketplace, abandonments occurred because private parties such as homeowners, mortgage holders, and insurance companies did not have an adequate incentive to avoid them. In our view, it would undermine the purposes of section 657A.10A to allow a homeowner's private dispute with her insurer, even if meritorious, to serve as a defense to an abandonment proceeding. If the insurer never paid, could the house remain boarded up and deteriorating forever?[1]
As the supreme court has stated regarding section 657A.10A in a somewhat different context:
 [T]he evil to be remedied is the existence of unsafe abandoned buildings. A building abandoned before the effective date of the statute creates the same unsafe condition as a building abandoned
 after the effective date of the statute. The unsafe condition created by abandoned buildings, regardless of when they became abandoned, is the evil to be remedied.
City of Waterloo v. Bainbridge, 749 N.W.2d 245, 251
(Iowa 2008). To paraphrase the supreme court, "the same unsafe condition" is present whether abandonment is the fault of the homeowner or that of the homeowner's insurer. We also note thatother remedies exist under the law of this state, including the tort of bad faith, for insurers that do not honor their claims-paying obligations.
Based on the foregoing, we affirm the district court's ruling that Harder abandoned the house.
AFFIRMED.
Zimmer, S.J., concurs; Vaitheswaran, P.J. dissents.
[1] One can also think of other scenarios: If a bank forecloses its mortgage on an abandoned house, but then fails to fix it up and allows it to keep deteriorating, is the city without remedy under section 657A.10A so long as the bank is meeting its financial obligations, such as payment of property taxes? This is not an abstract hypothetical, given the current troubles in our economy.