**IN THE COURT OF APPEALS OF IOWA**

No. 15-0295
Filed January 27, 2016

**CITY OF HARLAN, IOWA,**
       Petitioner-Appellee,

**vs.**

**WALTER ROGERS,**
       Respondent-Appellant.
_____

       Appeal from the Iowa District Court for Shelby County, Kathleen A. Kilnoski, Judge.


       A property owner appeals the district court's finding his property was abandoned and the award of title to the city.  **AFFIRMED.**


       Mark McCormick of Belin McCormick, P.C., Des Moines, for appellant.

       Todd J. Argotsinger and Bryan D. Swain of Salvo, Deren, Schenck, Swain & Argotsinger, P.C., Harlan, for appellee.


       Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

This appeal raises the question whether an owner's subjective desire to maintain possession of real property should be weighed by the court when deciding if a city has met its burden to prove a building has been abandoned under Iowa Code section 657A.10A (2011). The district court decided the real property owned by Walter Rogers at 1409 Sixth Street in Harlan "posed a danger" to the neighborhood. The court granted the city's petition for title to the property. Rogers contends the court erred in finding he abandoned his property, in part because he expressed his intent to live in the house when he completed the repairs.

In our de novo review,[1] we reach the same conclusion as the district court. Even if Rogers's subjective intent is relevant to the abandonment equation, it is not sufficient to overcome the other circumstances tipping the scales toward the city's position. The house at issue has been unoccupied and without utilities for more than a decade. Rogers is an absentee owner and has struggled to maintain the property from his home in California. The district court reasonably balanced the factors set out in section 657A.10A(3) to deem the property abandoned.

I. **Background Facts and Proceedings**

The house—built in 1885—belonged to Victor Carl until his death in 2004. Carl moved out of the house and into a care center in 2002. Nobody has lived in the house since then. Carl's family shut off the utilities, and they were never

---

[1] Iowa Code section 657A.10A(1)(b) requires the action to be tried in equity. Accordingly, our review is de novo. Iowa R. App. P. 6.907.

restored. After his death, Carl's daughter, Sallee Wittig, visited from California with Rogers to settle her father's estate. The real property, including the house and a garage, was the only asset in the estate, and Wittig was the sole heir.

The property was burdened with liens from Carl's health care bills. Wittig did not have the means to satisfy the liens, so Rogers offered to purchase the property in consideration for assuming responsibility for the liens. Rogers took title by court officer deed in October 2004.

After taking title, Rogers helped Wittig clean out some of Carl's clothing and other belongings from the house "because it hadn't been lived in for quite a while." Rogers recalled paying $3000 to replace a leaky roof over the kitchen and removing overgrown bushes from the yard, before returning to his home and business in California. Since that time, Rogers has visited Harlan about once a year, but has never stayed in the house.

Over the years, Rogers has encountered difficulty hiring help to keep up the property. Starting in 2007, the city sent notices to Rogers concerning yard work and debris removal. The city eventually had the work performed and billed Rogers for the costs as special assessments to be collected with the real estate taxes. According to the city, Rogers tallied a dozen special assessments between 2007 and 2014. Rogers paid those assessments.

Vandals and burglars have also preyed on the unoccupied property. Rogers recalled the door that he secured had been kicked in and the house was "trashed." He later re-secured it with padlocks, but "they broke in again."

Carl's classic motorcycle was stolen from the garage in 2009, and a refrigerator, piano, and various antiques were stolen from the house.

In August 2011, the Harlan police department received a nuisance complaint about the house. At the request of the police, Shelby County Environmental Health Specialist Joe Stroeher inspected the property. Stroeher reported to the city manager:

> Upon arriving at the property it is very apparent that the owners have let this property go for many years without any maintenance or upkeep. The house is almost completely shielded with trees and shrubs. The garage roof has holes in it which can provide habitat for coons and other varmints.

According to Stroeher's report, the back door was not secured, and the interior of the house was "full of old furniture/debris/food" which provided a "great habitat" for rats, mice and raccoons. The inspector questioned whether the house was inhabitable. He recommended: "If after a reasonable time frame the owner/owners fail to comply I would recommend condemnation proceedings begin."

The city filed its petition under section 657A.10A on June 22, 2012. On August 8, 2012, Roger Bissen, the city building inspector, sent Rogers an order asserting the house and garage constituted a nuisance and were in violation of the local housing code in seven particulars:

> 1. In places, the structural framework on the main floor is not adequate to support normal loads on the floor.
> 2. The interior of the basement is destroyed. All plumbing and fixtures have been torn out of the structure.
> 3. Several trees are maturing close to the foundation which are likely to exert excess pressure against the foundation which will compromise the integrity of the foundation.

4. The foundation mortar is deteriorating and the foundation is not otherwise adequate to support the structure. Many sections of the structure already sag, droop, and lean because they are not adequately supported. Consequently, the structure is in danger of collapsing in places.

5. The structure contains several broken windows which allow vermin or other animals to enter into the premises which creates a serious potential for the onset of disease throughout the entire structure. Rats have been observed in the structure. Other vermin are likely living in the structure.

6. The garage on the premises is a haven for vermin.

7. . . . Joe Stroeher from the Shelby County Health Agency has inspected the above described premises and found same, in its present condition, to constitute a health hazard.

Because Rogers made "substantial compliance with the pre-condemnation demands" made by the city, the parties filed a joint motion for a continuance. The court granted a continuance until July 2014, and another continuance until September. In September, Rogers's counsel moved to withdraw, stating: "Over a year has been spent, with the full cooperation of counsel for the [city], trying to obtain repairs and appraisals needed to solve this matter without trial, but [Rogers] has had difficulty in either understanding or performing those directives from the undersigned."

Rogers represented himself when the court held trial on January 14, 2015. Rogers and city building inspector Bissen were the only witnesses. Bissen did a final walk-around of the house the day of the trial. He noted the brick foundation remained in disrepair and places around the doors allowed moisture to seep into the outside walls. He testified the structure was not in compliance with the city housing code. The city offered photographs from that inspection and from earlier visits.

On January 21, 2015, the district court issued its order, concluding, "The evidence simply was overwhelming that the property has deteriorated significantly since 2004 and poses a danger to neighboring properties and residents because of its dilapidated condition and appeal to criminals." The court declared the property abandoned under section 657A.10A and awarded title to the city.[2] Rogers now appeals.

## II. Analysis

Rogers argues the district court erred in finding the house and garage were abandoned. He contends "[t]his is not a case of indifference or neglect. It is a case involving an owner who has made serious efforts to preserve his ownership of the property by addressing the deficiencies identified for him by the city." We conclude Rogers's preservation efforts have been insufficient to remedy the deterioration and unsafe condition posed by the house and garage.

Iowa Code section 657A.1(1) defines an "abandoned" building as one that "has remained vacant and has been in violation of the housing code of the city in which the property is located . . . for a period of six consecutive months." In addition to that definition, section 657A.10A enumerates a list of factors a court "shall consider" in deciding if property subject to a city's petition for title has been abandoned. Those factors include:

> a. Whether any property taxes or special assessments on the property were delinquent at the time the petition was filed.
> b. Whether any utilities are currently being provided to the property.

---

[2] For real estate tax purposes, the buildings had an assessed value of $5168, and the land had an assessed value of $13,932, for a total value of $19,100 as of the date of trial.

c. Whether the building is unoccupied by the owner or lessees or licensees of the owner.
d. Whether the building meets the city's housing code for being fit for human habitation, occupancy, or use.
e. Whether the building is exposed to the elements such that deterioration of the building is occurring.
f. Whether the building is boarded up.
g. Past efforts to rehabilitate the building and grounds.
h. The presence of vermin, accumulation of debris, and uncut vegetation.
i. The effort expended by the petitioning city to maintain the building and grounds.
j. Past and current compliance with orders of the local housing official.
k. Any other evidence the court deems relevant.

Iowa Code § 657A.10A(3). In considering the purpose of section 657A.10A in a somewhat different context, our supreme court described the "evil to be remedied" as "the existence of unsafe abandoned buildings." *City of Waterloo v. Bainbridge*, 749 N.W.2d 245, 251 (Iowa 2008).

On appeal, Rogers underscores his desire to "maintain his ownership in the property in Harlan." He cites the common law definition of abandonment as "the surrender, relinquishment, disclaimer, or cessation of property or of rights. Voluntary relinquishment of all right, title, claim and possession, with the intention of not reclaiming it." *See Abandonment*, Black's Law Dictionary (6th ed. 1990). While recognizing this definition is not controlling, he contends the concept "underlies the spirit and effect of the statutory factors." He contests the district court's weighing of the factors.

Our de novo review of the record and balancing of the relevant factors leads us to the same result as that reached by the district court. First, we recognize Rogers was up to date on his property taxes and special assessments.

But over the years he has owned the house, Rogers has defaulted to using the city essentially as his handyperson—allowing city workers to repeatedly expend efforts to maintain the house and yard—and then paying the special assessments. This cycle of nuisance abatements poses a burden to the city's resources even if the owner eventually makes reimbursements.

Significantly, for more than twelve years, the residence has been unoccupied and without utilities. As the district court noted: "This is not a home that merely needs to have the utilities connected in order to be habitable. While the respondent argued that many a vacation home is left vacant and without working utilities for many months, this structure is not that vacation home."

While the house was not boarded up, it did not meet the city's housing code for human habitation, according to inspector Bissen. The interior has been exposed to the elements through unsecured doors and a crumbling brick foundation. Bissen pointed to photographic exhibits showing the foundation was "not supporting the structure at all" at some corners of the building. According to Bissen, the gaps in the foundation were large enough for vermin to enter, and piles of debris remained inside the house.

Rogers testified to spending $10,000 on the property in the eighteen months leading up to the trial. But aside from repairs to the porch roof and ceiling undertaken by Rogers in 2014, the record revealed he exerted little effort to improve the building since taking ownership. Rogers acknowledged the continuing need to repair the foundation, but asserted difficulty in finding a contractor or mason and the intervening winter weather. He testified: "I'm willing

to spend my money to fix it up. I'm a little slower maybe than if I lived here or if I had all the contacts the City does, but I would do it at my expense." He also testified he planned to reside in the house when it was "ready to be lived in."

While some of the statutory factors weigh against a finding of abandonment, including Rogers's recent efforts to rehabilitate the structure, the majority of the considerations favor the city's abandonment argument. For example, the house's deteriorating condition and the repeated break-ins pose a safety hazard for the neighborhood. *See City of Council Bluffs v. Harder*, No. 08-1315, 2009 WL 3775116, at *2 (Iowa Ct. App. Nov. 12, 2009).

In defining an "abandoned" building, the legislature set a time frame of six consecutive months of being vacant and in violation of the city housing code. *See* Iowa Code § 657A.1(1). In this case, the city of Harlan has been exceedingly patient with Rogers. His property has been uninhabited for more than a decade. We concur with the district court's determination that the deteriorating condition of the house and garage supports the city's petition, notwithstanding Rogers's subjective desire to maintain ownership of the property.

**AFFIRMED.**