# IN THE COURT OF APPEALS OF IOWA

No. 23-1261
Filed September 4, 2024

**CITY OF DONNELLSON, IOWA,**
     Plaintiff-Appellee,

**vs.**

**JULIE WALLJASPER,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Lee (North) County, Joshua P.
Schier, Judge.

     A property owner appeals from a judgment finding the property abandoned
and awarding title to the city under Iowa Code section 657A.10B (2021).
**AFFIRMED.**

     Ryan D. Gerling of Cray Law Firm, PLC, Burlington, for appellant.

     Steven C. Leidinger of Lynch Dallas, P.C., Cedar Rapids, for appellee.

     Considered by Schumacher, P.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

In the small town (technically, a "city") of Donnellson, the police chief is also the city code official, tasked with inspecting residences and buildings for municipal violations. In 2017, a vacant house caught Chief Brad Roberts's attention—it was unoccupied, unkept, and appeared unsafe. So he contacted the owner—Julie Walljasper—about fixing the house's many municipal violations. Six years, five abatement notices, and two city council hearings later, the house continued to deteriorate. The City thus petitioned under Iowa Code section 657A.10B (2021) to obtain title to the derelict house. After a one-day bench trial, the district court held the house was abandoned and transferred title to the City.

On appeal, Walljasper challenges the abandonment finding, mainly arguing that she made enough improvements to avoid losing the property. She also challenges an evidentiary ruling that she could not cross-examine Chief Roberts on a topic he did not address in his direct examination.

On our de novo review, affording due weight to the district court's factual findings, we affirm. The trial evidence shows the house sits vacant, continues to deteriorate, and is unfit for human occupancy. Walljasper indeed made some improvements, but she only took meaningful steps after this petition was filed. And those eleventh-hour fixes were not enough to abate the house's dilapidated condition. We thus find the house has been abandoned and the court properly awarded title to the City. As for the evidentiary ruling, the district court reasonably limited the scope of Walljasper's cross-examination, and she did not try to raise the issue herself during her direct testimony. So we find no abuse of discretion.

## I.       Background Facts and Proceedings

Julie Walljasper bought a house in Donnellson in October 1990.[1]  More than two decades later, in 2014, Julie asked the City to turn off water service to the house and shared that she had not "put trash out in over a year."  So the house has had no active water, sewer, or garbage utility services since then.  Nor has anyone lived in that house for at least a decade.

In the fall of 2017, the house caught the attention of city officials, as its deteriorating state was becoming a nuisance.  City employees repeatedly tried to contact Walljasper about the house's problems—a sewage backup in the basement emitting a foul smell from the house, a collapsing porch, and unkept brush in the backyard—to no avail.  After hearing nothing from Walljasper, the City entered the house in December and partially mitigated the sewage backup.

In May 2018, the City issued an order compelling Walljasper to "cease and abate" the house's municipal violations.  The order further required Walljasper to submit a remedial plan to the City detailing her intended actions to cure the nuisance.  In response, Walljasper informed the City she intended to tend to the lawn more often, the sewage issue had resolved, she would remove a van from the property, and she hoped to fix a broken window soon.

But Walljasper did not follow through, and as time passed more problems arose.  Some tar paper was now blowing off the roof, dense brush still had not been cleared, and debris collected around the yard.  So that fall the City again

---

[1] David Walljasper was a co-purchaser of the house.  But the record is silent on his involvement with the house since 1990.  While he was served with this lawsuit, he never appeared or answered and does not participate in this appeal.  We thus refer only to Julie Walljasper throughout this opinion.

ordered Walljasper to cease and abate the house's nuisances—including removing junk around the house, repairing or removing the front porch overhang, and clearing brush. After multiple tries at contacting her, Chief Roberts met with Walljasper in December to discuss the house's progress.

Despite this meeting, the problems persisted. So in June 2020, the City sent another order to abate nuisance. This time, the order found the house "is vacant and unfit for human habitation and occupancy." In particular, the front porch wood was deformed and deteriorating, windows were broken, trees were growing out of the foundation, and various junk and clutter had accumulated on the porch. The order gave Walljasper seven days to "close up the structure and have it secure," or the City would take further action including proceedings under Iowa Code chapter 657.

Walljasper appealed to the City Council. After a hearing, Walljasper was ordered to hire a contractor and work with Chief Roberts on a timeline to complete improvements. Though Walljasper tried to secure a contractor, she never met with Chief Roberts, and the prospective contractor ultimately did little work on the house.

So in October the City again sent Walljasper a "Notice and Order to Abate Violations," which notified Walljasper "one last time" that her house was "in continuing violation of various" municipal ordinances. As with the prior orders, the list of violations grew—junk vehicles were parked on the property; the house now harbored rodents; the front porch roof was still deteriorating; the porch itself had rotted and was now structurally unsound; the rear balcony was also rotting; and portions of exterior walls were exposed, causing weather and vermin to enter the

house. And the order notified Walljasper that failure to correct these violations could result in the City seeking title to the house under Iowa Code chapter 657A.

In May 2021, after observing that the vacant house was still in a state of disrepair, Chief Roberts contacted Walljasper about arranging a date and time for an inspection. *See generally* Donnellson, Iowa, Code § 156.05(3) (2021) (authorizing city code official to enter and inspect a structure when "the code official has reasonable cause to believe" a municipal violation exists, provided the official "first make[s] a reasonable effort to locate the owner, owner's authorized agent or other person having charge or control of the structure or premises and request entry"). After some back and forth, Walljasper ultimately refused entry. So Chief Roberts obtained an administrative search warrant and entered the house in July.

The inspection showed more of the same—accumulated junk and debris, the front porch was still rotted, the roof was "at the end of its useful life," rodents and vermin were still present, and the house's interior was water damaged and "so littered with boxes, personal items, and trash" that walkways were obstructed. As a result, the City served Walljasper with yet another order to abate violations, which again notified her of the house's continuing delinquencies and that failure to cure within thirty days could result in civil penalties or the City seeking title to the abandoned property under chapter 657A. Once again, Walljasper appealed to the City Council, which affirmed the terms of the Notice and its imposed deadline to remedy the violations.

About three months later, the City petitioned to take title to the house under section 657A.10B, which authorizes municipalities to seek title to abandoned property. According to the City, the house was unsafe and Walljasper failed to

take good-faith steps to rectify its condition. The court held a one-day bench trial, where Chief Roberts testified to the house's condition over the years and the City's efforts to bring it into compliance. Walljasper, in turn, testified to her efforts and the circumstances she felt precluded her from doing more to fix the property.

After reviewing the evidence—which included photographs of the house over time—the district court found for the City and transferred title to the house. In so finding, the district court emphasized the lack of water and garbage utilities for the past nine years, the degree of disrepair rendering the house unfit for human occupancy, and Walljasper's minimal efforts to rehab the house. As for Walljasper's history of inaction, the court concluded she had "blatantly disregarded almost all of the City's notices and orders to abate over a seven (7) year period. Minus a few minor repairs, the building today is in no better condition than it was when the first nuisance letter was sent to [Walljasper]."

What's more, the court found that evidence showed the house was "a welcome harbor for vermin, and the unoccupied and poorly secured building could easily lead to harm for children in the area." And the court wondered how "no one has ever been injured or harmed over the last several years." So while the court was sympathetic to "[Walljasper's] subjective intent to some day improve" the house, the City's evidence showed the house had been abandoned. The court thus granted the City title to the house. Walljasper now appeals.

## II.    Abandonment under Iowa Code section 657A.10B

Run-down, abandoned properties do not merely "detract from the communities' aesthetic appeal," but "can also constitute a danger to the public health, safety, or welfare." *City of Eagle Grove v. Cahalan Invs., LLC*, 904 N.W.2d

552, 555 (Iowa 2017). In response to the public risks posed by derelict buildings, the legislature authorized municipalities to petition for title to properties that have "been abandoned for at least six consecutive months." Iowa Code § 657A.10B(2)(a). Though seeking title is one of several tools in a municipality's toolbox to combat nuisances or other unsafe structures, *see id.*, we have described title actions as "a final resort against those property owners who have otherwise failed to comply with housing codes, building codes, nuisance laws, or tax assessments when less drastic steps toward compliance have failed." *City of Monroe v. Nicol*, 898 N.W.2d 899, 903 (Iowa Ct. App. 2017).

Once a municipality petitions to obtain title to an allegedly abandoned building, the property owner has sixty days to make good-faith efforts to cure the defects. *See* Iowa Code § 657A.10B(3) (instructing municipalities to request a hearing "[n]ot sooner than sixty days after the filing of the petition"); *id.* § 657A.10B(5) (allowing courts to enter judgment if "all parties with an interest in the property . . . did not make a good-faith effort to comply with the order of the local housing or building code official within sixty days after the filing of the petition"). If the action proceeds to a hearing, the court must weigh the statute's enumerated factors to determine whether the property has been abandoned. *See id.* § 657A.10B(4)(a)–(m). And if the court finds that the building is abandoned, it must award the municipality title to the property. *Id.* § 657A.10B(6).

Municipal actions to obtain title to abandoned property are equitable in nature, and thus our review is de novo. *Id.* § 657A.10B(2)(b); *Nicol*, 898 N.W.2d at 901. But even though we are not bound by the district court's factual findings,

we are mindful of the district court's "front-row seat to the live testimony." *Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024). So we give its findings due weight. *Id.*

Turning to the main issue of abandonment, a building is "abandoned" when it sits "vacant, or is occupied only by trespassers, and [is] in violation of the housing code or building code of the city in which the property is located." Iowa Code § 657A.1(1). And to guide our inquiry, we consider: (1) whether property taxes are delinquent; (2) if the house has utilities; (3) whether the house is occupied; (4) whether the house satisfies the City's housing and building codes for being fit for habitation, occupancy, or use; (5) if the house's exposure to the elements has caused deterioration; (6) whether the house is "boarded up or otherwise secured from unauthorized entry"; (7) any past efforts to rehabilitate the house; (8) any good-faith efforts "to restore the property to productive use"; (9) whether vermin, debris, or "uncut vegetation" are present; (10) if the City has maintained the house; (11) whether prior orders from local officials were followed; and (12) any other relevant evidence. *Id.* § 657A.10B(4)(a)–(m).

Like the district court, we believe these factors support finding abandonment. Though Walljasper is current on her property taxes, the house has not had water, sewer, or garbage-collection services since 2014. The house sits vacant and has been unoccupied since at least Walljasper turned off these utilities, if not long before then given Walljasper's 2014 statement that she had not "put trash out in over a year." True, Walljasper testified to visiting the property to mow the lawn every seven or ten days. But occasionally mowing is a far cry from occupying the house, and Walljasper concedes that "no one is currently living on the property."

Nor could anyone live on this property—the house is not fit for human habitation, occupancy, or use. On this point, Walljasper insists that she has remedied the major problems. And to be sure, shortly before trial Walljasper worked to correct some of the identified violations. She patched the front door and added railings to the balcony. Some parts of the front porch had been repaired. She also cleaned up some debris on the front porch. And many roof shingles have been replaced.

But photographs taken a few days before trial undermine Walljasper's position that no major problems persist. Those photographs show significant debris, deteriorating windows, rotted exterior, and much of the porch remains in poor condition. Nor has Walljasper done anything to improve the interior of the house—an interior that is water damaged and so brimming with garbage it was hard to walk. So Walljasper's eleventh-hour improvements are not enough to make the house secure or fit for human habitation, occupancy or use.

Walljasper's minimal prior rehabilitative efforts and history of noncompliance with the City's notices are also significant. The trial record shows Walljasper received at least five written notices of municipal violations, two city council hearings, and many chances to shore up the house before the City turned to the district court. Walljasper assails these prior actions as government overreach. Yet where Walljasper sees "bureaucratic efforts to overregulate and micromanage" her conduct, we see city officials being "exceedingly patient," allowing Walljasper six years to cure her dangerous property. *City of Harlan v. Rogers*, No. 15-0295, 2016 WL 351577, at *5 (Iowa Ct. App. Jan. 27, 2016). Title actions under section 657A.10B were designed "to address this specific type of

situation, where a neighborhood house has been vacant, uninhabitable, unrepaired, and deteriorating for [multiple years], with no end in sight." *City of Council Bluffs v. Harder*, No. 08-1315, 2009 WL 3775116, at *2 (Iowa Ct. App. Nov. 12, 2009). And the City's invocation of section 657A.10B here is consistent with the "final resort" nature of these actions, taken "when less drastic steps toward compliance have failed." *Nicol*, 898 N.W.2d at 903.

In the end, while we appreciate Walljasper's "subjective desire" to keep ownership of the vacant house, her past "preservation efforts have been insufficient to remedy the deterioration and unsafe condition posed by the house." *Rogers*, 2016 WL 351577, at *1, 3. Considering the statutory factors and the evidence in the record, we affirm the district court's finding of abandonment and awarding of title to the City.

### III. Evidentiary Ruling on Sewage-Backup Cross-Examination

Walljasper also argues that the district court improperly prevented her from presenting evidence about the 2017 sewage-backup issue during trial. We review evidentiary rulings for abuse of discretion. *State v. Tucker*, 982 N.W.2d 645, 652 (Iowa 2022).

During trial, Chief Roberts testified on direct examination about the prior steps the City had taken to respond to the house's violations. Though he referenced documents that mentioned the 2017 sewer issue, Chief Roberts did not testify directly about it, nor did he testify that the issue was ongoing or currently contributed to the house's unsafe condition. Still, Walljasper—representing herself —tried to cross-examine Chief Roberts about the sewage issue. The City objected to relevance, arguing the Chief did not place the sewer backup at issue. Walljasper

countered that she wished to prove that she had contacted the City for help, the City did nothing, and that event illustrates "the way [the City has] treated [her] with all these proceedings all along." The court sustained the objection and told Walljasper to "move on to a different topic" for her cross-examination.

The district court "has a wide discretion in the matter of relevancy rulings," *Spahr v. Kriegel*, 617 N.W.2d 914, 916 (Iowa 2000), and we will not disturb its judgment unless "it bases its decisions on grounds or reasons clearly untenable or to an extent that is clearly unreasonable." *Stender v. Blessum*, 897 N.W.2d 491, 501 (Iowa 2017). We find no such abuse here. The court may limit the scope of cross-examination to only those matters raised on direct. *State v. Holmes*, 325 N.W.2d 114, 117 (Iowa 1982). And when it came time for Walljasper herself to testify, she never tried to discuss the sewer incident or provide greater context for the backup. So she—not the district court—was the cause of the lack of her testimony on the topic.[2] Seeing no reversible error, we thus affirm the district court's evidentiary ruling too.

**AFFIRMED.**

---

[2] Thus, to the extent Walljasper argues that the district court's ruling not only narrowed the scope of her cross-examination but also precluded her from offering this evidence while presenting her case in chief, she has not preserved error. During her direct testimony, Walljasper never made an offer of proof on the sewage-backup evidence that she now claims was prejudicially excluded. "We will not presume prejudice when the answer to the question is not obvious and the proponent made no offer of proof. Nor will we consider error preserved without such an offer unless the whole record makes apparent what is sought to be proven." *State v. Lange*, 531 N.W.2d 108, 114 (Iowa 1995) (cleaned up). So even reading the district court's ruling as broadly as Walljasper invites, Walljasper's failure to make an offer of proof forecloses appellate review.